IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| M G CONSTRUCTION, INC. | ) | |
| | ) | No. 04-cv-00473-MBH |
| Plaintiff, | ) | (Judge Horn) |
| vs. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM IS SUPPORT OF PARTIAL SUMMARY JUDGMENT

Plaintiff M.G. Construction, Inc. ("M. G. Construction") hereby offers the following memorandum in support of its motion for partial summary judgment. Since there are no genuine issues of material fact, and since M. G. Construction is entitled to judgment under the plain language of the subject contract, M. G. Construction respectfully requests that the Court award partial summary judgment in its favor and against the United States, holding that the United States must pay M. G. Construction $1.50 per square foot ("SF") for each SF of aggregate surfacing removed, that M. G. Construction has removed 243,100 SF of aggregate surfacing, and, therefore, the United States owes M. G. Construction $364,650 for aggregate surfacing removal.

Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. RCFC 56(c); *National Westminister Bank, PLC. v. United States*, 58 Fed.Cl. 491, 496 (2003). The mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no genuine issue of material fact. *See National Westminister Bank*, 58 Fed.Cl. at 496. A genuine dispute concerning a material fact exists when the evidence presented would permit a reasonable jury to find in favor of the non-movant. *See Commonwealth Edison Co. v. United States*, 56 Fed.Cl. 652, 657 (2003). The United States, as the non-moving party, "[m]ust set forth specific facts showing that there is a genuine issue for trial." RCFC 56(e). The non-movant must establish the existence of a material element on which it will bear the burden of proof at trial. *See Commonwealth Edison*, 56 Fed.Cl. At 657. Unsupported assertions or conclusory allegations are insufficient to withstand summary judgment. *Id.* Under the plain language of the contract, the United States cannot advance any genuine question of material fact and M. G. Construction is entitled to summary judgment.

<u>Contractual Interpretation and Summary Judgment</u>

Interpretation of the terms of a government contract is a question of law to be decided by the Court. *See CW Governmaent Travel, Inc. v. United States*, 61 Fed.Cl. 559, 571 (2004) (*citing Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed.Cir. 1985)). The United States Court of Appeals for the Federal Circuit repeatedly has held that contract interpretation is a question of law generally amenable to summary judgment. *See TLT Construction Corp. v. United States*, 60 Fed.Cl. 187, 193-94 (2004). The Court is required to interpret the contract by its plain language. *Id.* At 194. An interpretation that gives a reasonable meaning to all parts of a contract will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result. *See CW Government Travel, Inc.*, 61 Fed.Cl. at 571.

Statement of Facts[1]

The United States, by and through the United States Air Force, issued Solicitation Number F48608-01-R-001 for Project Number GHLN 01-1004, known as the Roof Requirements Contract for the Air Force Space Command at the F.E. Warren Air Force Base, Wyoming. The work required repairing or replacing existing roofing on various base buildings. The work included demolition and removal of existing roofing, including a line item for aggregate surfacing removal.

The solicitation required a bidder to provide a proposal for each of the Bid Items described in the Bid Schedule. All demolition items, which included aggregate surface removal, included all industry standard safety and work practices, proper tools, enclosed chutes, dust control, dumpsters, legal disposal of wastes, etc., associated clean up and preparation / cleaning to support succeeding material installation. In multiple instance, the bidder was referred to the Bid Schedule provided by the Government for actual breakdown of Bid Items.

The solicitation required bidders to complete "Part I - The Schedule, Section B, Supplies or Services and Prices/Costs." The Schedule required bidders to provide a "UNIT PRICE" per "SF" (square foot) for "Remove Aggregate Surfacing" for "BUR & EPDM" under "Demolition." The gravel must be removed before any of the BUR material is removed. The United States estimated the quantity of aggregate surfacing that needed to be removed at "200" SF. The United States did not allow a site inspection prior to bidding.

[1]For specific citations, please see the accompanying Proposed Findings of Uncontroverted Fact submitted with this motion.

For the contract line item "Remove Aggregate Surfacing," M. G. Construction bid $1.50 per SF. On June 29, 2001, the United States, by and through the United States Air Force, awarded M. G. Construction, Inc. the contract, numbered F48608-01-D-0008, to perform the roofing work at F.E. Warren Air Force Base. In 2002, M. G. Construction removed 125,800 SF of aggregate surfacing. In 2003, M.G. Construction removed 117,300 SF of aggregate surfacing. In total, M.G. Construction removed 243,100 SF of aggregate surfacing. The final amount of aggregate surfacing removal was over 1215 times the estimated amount of 200 SF indicated by the United States in the solicitation. At $1.50/SF, the total amount M.G. Construction earned was $364,650. Contrary to the plain language of the contract, the United States has failed to pay for any of the aggregate removal.[2]

## Argument

This matter involves a very simple interpretation of the parties contract. Plaintiff M. G. Construction is not seeking anything more than its bargained-for benefit. This is not a motion based upon changed conditions or extra work. The United States asked for a hard per-unit price for aggregate surface removal based upon an "estimated" quantity yielding an "estimated" amount. *See* Exhibit 1. M.G. Construction provided a hard per-unit price of $1.50 per SF. *See* Exhibit 1. M.G. Construction removed 243,100 SF of aggregate surfacing. *See* Declaration of Miguel Garcia, ¶6; Exhibit 3. To date, the United States has paid nothing, resulting in financial hardship for its contractor and a substantial injustice. *See* Declaration of Miguel Garcia, ¶7.

Under the plain language of the contract, M.G. Construction is entitled to $1.50 for every SF of aggregate removed. *See* Exhibit 1. Since there are no genuine issues of material fact, and

[2] Or even for the 200 SF it estimated were present.

since M. G. Construction is entitled to judgment under the plain language of the subject contract, M. G. Construction respectfully requests that the Court award partial summary judgment in its favor and against the United States, holding that the United States must pay M. G. Construction $1.50 per SF for each SF of aggregate surfacing removed, that M. G. Construction has removed 243,100 SF of aggregate surfacing, and, therefore, the United States owes M. G. Construction $364,650 for the removal of aggregate surfacing.

A. The contract requires the United States pay $1.50 for each SF of aggregate surfacing removed.

The United States, by and through the United States Air Force, issued Solicitation Number F48608-01-R-001 for Project Number GHLN 01-1004, known as the Roof Requirements Contract for the Air Force Space Command at the F.E. Warren Air Force Base, Wyoming. Regarding "SCOPE," the solicitation required M.G. Construction to "[p]rovide all labor, means, operations, materials, sales tax, accessories and incidentals necessary for performing all operations required for repairing or replacing existing roofing on various base buildings...." *See* Exhibit 2 (1.1 SCOPE A). Regarding scope, the contract instructed M.G. Construction to "[r]efer to Bid Schedule as furnished by the Base Contracting Office for breakdown of bid items." *See* Exhibit 2 (1.1 SCOPE C) (emphasis added). Regarding "STATEMENT OF WORK," the contract informed M. G. Construction that:

> [t]he work will be performed on non-housing type buildings, such as dormitories, administrative facilities, and industrial buildings, and Military Family Housing units. The work to be performed shall consist of, but is not necessarily limited to, the following principal features:
>
> A. Demolition and removal of existing roofing.
>
> [...]
>
> H. Related or incidental work which is manifestly necessary or customary to finish the project and provide a complete installation.

*See* Exhibit 2 (GENERAL REQUIREMENTS, 1.2 STATEMENT OF WORK). Regarding "DESCRIPTION OF BID ITEMS," the contract required M. G. Construction to "[p]rovide a proposal for each of the Bid Items described in the Bid Schedule." *See* Exhibit 2 (GENERAL REQUIREMENTS, 1.38 DESCRIPTION OF BID ITEMS, A) (emphasis added). "The description for each [bid] item is a 'scope description', incomplete and abbreviated, and does not detail the full range of materials and processes needed to complete the required work." *Id.* at C. Regarding demolition, the solicitation informed that "[a]ll demolition items shall include all industry standard safety and work practices, proper tools, enclosed chutes, dust control, dumpsters, legal disposal of wastes, etc. [...] [d]emolition items to include associated clean up and preparation / cleaning to support succeeding material installation." *Id.* at D. Once again, M. G. Construction was to "[r]efer to the Bid Schedule provided by the Government for actual breakdown of Bid Items." *Id.* at D (emphasis added).

The solicitation required bidders to complete "Part I - The Schedule, Section B, Supplies or Services and Prices/Costs." *See* Exhibit 1. This Schedule is the Achilles' Heel of the United States. The Schedule, in plain and simple language, required bidders to provide a "UNIT PRICE" per "SF" (square foot) for "Remove Aggregate Surfacing" for "BUR & EPDM" under "Demolition." *See* Exhibit 1. The Schedule did not ask for a lump sum for demolition or a lump sum for removal of aggregate surrfacing, it asked for a unit price per SF to remove aggregate surfacing. *See* Exhibit 1. The United States estimated the quantity of aggregate surfacing that needed to be removed at "200" SF and included such figure in Contract Line Item Number 0001AA. *See* Exhibit 1.

For the line item "Remove Aggregate Surfacing," M. G. Construction, based upon the

solicitation's instructions, bid $1.50 per SF. *See* Exhibit 1. On June 29, 2001, the United States, by and through the United States Air Force, awarded M. G. Construction the contract, numbered F48608-01-D-0008, to perform the roofing work at F.E. Warren Air Force Base. *See* Complaint, ¶3; Answer, ¶3.

B. M. G. Construction has removed 243,100 SF of aggregate surfacing.[3]

In 2002, M. G. Construction removed 125,800 SF of aggregate surfacing. *See* Exhibit 3. In 2003, M.G. Construction removed 117,300 SF of aggregate surfacing. *See* Exhibit 3. In total, M.G. Construction removed 243,100 SF of aggregate surfacing. *See* Exhibit 3. The final amount of aggregate surfacing removed was over 1215 times the estimated amount of 200 SF indicated by the United States in the solicitation. *See* Exhibit 1; Exhibit 3; Declaration of Miguel Garcia, ¶5. At $1.50/SF, the total amount M.G. Construction earned was $364,650. The United States failed to pay for any of the aggregate removal.[4]

Conclusion

The contract is clear. The United States asked for and received from a contractor, who was denied a site visit, a unit price for each SF of aggregate surfacing removed. The Schedule did not ask for a lump sum for demolition or for removal of aggregate surfacing, it asked for a unit price per SF to remove aggregate surfacing. M.G. Construction provided the United States with a $1.50 per SF unit price, which would include all the incidental costs associated with removing and disposing of a SF of aggregate surfacing, as was required by the solicitation. The

[3]As of the date of this motion, the United States has never questioned the quantities of aggregate surfacing removed, it has just failed to pay for such quantities per the contract unit price.

[4]Or even the 200 SF it estimated present.

United States accepted the offer. When a contractor bids a per unit price, the Contractor is entitled to receive that per unit price for all units completed. *See Perini Corp. v. US*, 180 Ct.Cl. 768 (1967); *Luther L. Essary Construction Co., Inc.*, 83-2 BCA ¶ 16,631 (1983). M.G. Construction is to receive $1.50 per SF, has removed 243,100 SF of aggregate surfacing, and is due $364,650.

Since there are no genuine issues of material fact and since M. G. Construction is entitled to judgment under the plain language of the subject contract, M. G. Construction respectfully requests that the Court award partial summary judgment in its favor and against the United States, holding that the United States must pay M. G. Construction $1.50 per square foot ("SF") for each SF of aggregate surfacing removed, that M. G. Construction has removed 243,100 SF of aggregate surfacing, and, therefore, the United States owes M. G. Construction $364,650.

DATED this 19th day of October, 2004.

"s/Joseph A. Yazbeck, Jr."
Joseph A. Yazbeck, Jr.
YAZBECK, CLORAN & HANSON, LLC
1300 SW 5th Av.
Suite 2750
Portland, Oregon 97201
(503) 227-1428
Attorney of Record for Plaintiff