Attachment A

**DEPARTMENT OF THE AIR FORCE**
90TH SPACE WING (AFSPC)

03 March 2005

MEMORANDUM FOR MG CONSTRUCTION
Attn: Miguel Garcia
3545 Portland Rd., Suite 160-A
Salem, OR 97303

FROM: 90 CONS/LCGA
7505 Marne Loop
F.E. Warren AFB, WY 82005-2860

SUBJECT: Contract F84608-01-D-0008, MG Construction, Certified Claim

1. Reference:
   a. Claim; Numerical Section Divider 1
      i. MG Construction Certified Claim, 10 Jan 05
      ii. CO letter of date of expected decision 25 Jan 05
      iii. PNM dated 25 Mar 2003
      iv. CO's Decision dated 05 Dec 03
      v. Current Spread Sheet of Claim Breakdown
      vi. Bid Schedule for Base Year, Specifications, Statement of Work
      vii. Additional Cricket, Nailer, and Shingle Documentation
      viii. Modification to incorporate all changes including Release Statement from contractor.

2. In accordance with your request for a Contracting Officer's final decision (references 1.a.i.), the final decision on the submitted Claim is hereby rendered.

3. 90CONS/LGCAR acknowledged receipt of your Certified Claim (reference 1.a.i), which contends that subject contract should be modified to reflect additional work performed and extra materials utilized in the amount of $161,741.29. You allege, "The amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable," and you seek a "course of action as per FAR 52.233-1, Contract Disputes Act of 1978, for extra work and materials completed on work orders." The review and resulting decision by the Government was based on the documents provided by 90th Civil Engineering, 90th Contracting Squadron, and M.G. Construction Inc.

4. The subject contract, awarded on 29 June 2001, required MG Construction to furnish all labor, equipment and materials (unless otherwise specified) necessary to perform roofing requirements at FE Warren AFB, complete and in accordance with the Statement of Work and applicable Technical exhibits which listed the tasks and frequency of performance. The basic contract period was from 29 June

2001 to 28 June 2002 with two one-year option periods of which one was not exercised.

5. **24 Gauge and Additional Flashing:** MG Construction has requested an equitable adjustment for the use of 24 gauge metal flashing and for installing additional flashing. MG Construction claims $14,571.00 for the installation of additional metal flashing on building 722 during 2004. The specifications for the installation of metal flashing required the use of metal flashing with a 15 year manufacturer's material labor warranty. Additionally, the Government required the use of 26 gauge metal flashing. MG Construction elected to use Mule Hide roofing materials for this project. Mule-Hide manufacturing required the use of 24-gauge metal-era flashing and coping in order to obtain the required 15-year manufacturer's warranty. The requirement to use 24-gauge metal flashing was the manufacturer's requirement, not a requirement by the Government. As such, the Government is not responsible for the additional cost incurred due to MG Construction's election to use Mule-Hide products. The claim for $14,571.00 is denied in whole.

6. **Crickets Claim:** MG Construction has requested an equitable adjustment in the amount of $5,661.00 for the installation of an additional 17 crickets on building 722. The term "cricket" as it pertains to this contract is the sloped area in square feet around a water drain that the contractor cuts out of foam insulation to precipitate the flow of water to that drain. MG Construction further claims $5,661.00 for the "removal of the 17 crickets." The Government is proceeding with the review of the claim for the installation of the crickets. The $5,661.00 claimed by MG Construction for the "removal of 17 crickets" appears to be an administrative or wording error by MG Construction as the removal of crickets is not an issue in this case. Therefore, the Government will not address the "removal of crickets" by MG Construction. On 1 Jul and 12 Jul 04, MG Construction notified the Government by e-mail (reference 1.a.vii) that there would be an additional 40 to 50 SQ of cricket space and that there was a pre-negotiated price of $333.05 per cricket for installation. (See reference 1.a.iii) However, MG Construction did not provide a definitive cricket area to allow the Government to determine the exact amount of equitable adjustment required. In order to satisfy the requirement for a definite area of measurement, the Government reviewed the existing blue prints for the building, counted the drain pipes, and measured each area that encompassed a cricket area. By utilizing AutoCAD, the Government determined the cricket area measured 4,772 SF. The Government then divided 4,772 by 100 and determined the SQ of the area to be 47.7 SQ. Based on the measurement of 47.7SQ and the installation of one cricket per SQ, the Government agreed to pay for the installation of 47.7 crickets. Although MG Construction claims to have installed a total of 65 crickets, MG Construction has not presented proof of the 17 additional SQ of cricket space for building 722. Therefore, the $5,661.00 claimed for installation of additional crickets is denied in whole.

7. **Wood Nailers Claim:** MG Construction has requested an equitable adjustment in the amount of $6,600.00 for the removal of wood nailers in 2004. MG Construction claims to have removed 2200 SF of wood nailers in 2004 pursuant to CLIN #0026AS. Additionally, MG Construction claims the Government paid for the removal of additional wood nailers in 2002 and 2003. The Government

does not dispute paying for the removal of additional wood nailers in 2002 and 2003. The Government paid for the removal of additional wood nailers in 2002 and 2003 because the building roofs that were demolished were found to have additional insulation and extra wood nailers instead of a standard BURS roof. As such, additional work was required to remove the wood nailers. However, that is not the case for building 722. The roof of building 722 was a PUFF (sprayed on) foam roof and the removal of the nailers was part of the demolition of the roofing materials under CLIN #0001AK. The $6,600.00 claim for the removal of wood nailers is denied in whole.

8. **Special Shingles Claim:** Based upon a Contracting Officer's decision and denial of a request to increase the shingle SQ price CLIN 0027AG from $36.00/SQ to $50.56/SQ in Sept 2003 (reference 1.a.vii), this claim is denied in whole because M.G. Construction has failed to submit documentation to support or verify the increase to the shingle SQ price CLIN #0027 AG.

9. **Profit/Overhead and Bond:** M.G. Construction asserts that the Government owes $7,294.37 in profit and overhead for the flashings in paragraph 5 and the shingles in paragraph 8. Due to the denial in whole in paragraphs 5 and 8, the claim is denied in whole.

10. **Breach of Requirements Contract Claim:** MG Construction requests an equitable adjustment for lost anticipatory profits in the amount of $161,741.29. MG Construction asserts that the Government had an actual need for roofing work to be performed and, pursuant to the terms of this requirements contract, the Government was required to purchase all of the Government needs from MG Construction. MG Construction alleges the Government has or will fulfill their actual needs from a competitor and this is a breach of this requirements contract. MG Construction also asserts that the Government will need 800,000 square feet of shingle work to fulfill the requirements of the last option year of the contract and will divert these requirements to another contractor which will result in a breach of the requirements contract.

    The Government acknowledges the Government is required to purchase all supplies and services specified and effective for the period stated in a requirements contract. However, in this case, the Government did not exercise the last option year of the contract. Therefore, the Government was not and would not have been required to purchase supplies and services from MG Construction for any work that could have or would been performed during the last option year of the contract. The Government attempted to complete the terms of the contract by issuing Delivery Orders 5009, 5011, 5012, 5013 and 5014. However, these Delivery Orders were terminated for convenience due to the failure of MG Construction to take action on the Delivery Orders. MG Construction's failure to take action on the Delivery Orders also resulted in the expiration of the funds that were to be utilized to pay for the supplies and services performed in the last option year and resulted in a Bona Fide Need issue for the Government.

    MG Construction is not entitled to anticipatory profits because the Government did not breach this requirements contract and because MG Construction did not complete any work or provide any services during the last option year. FAR

52.216-21, which was incorporated into this contract, states, "The quantities or supplies or services specified in the Schedule are estimates only and are not purchased by this contract. Except as this contract may otherwise provide, if the Government's requirements do not result in orders in the quantities described as 'estimated' or 'maximum' in the Schedule, that fact shall not constitute the basis for an equitable price adjustment." Furthermore, FAR 49.202, states, "The TCO shall allow profit on preparations made and work done by the contractor for the terminated portion of the contract but not on the settlement expenses. Anticipatory profits and consequential damages shall not be allowed .... Profit shall not be allowed the contractor for material or services that, as of the effective date of the termination, have not been delivered by a subcontractor, regardless of the percentage of completion." The Government did not exercise the last option year of the contract. In fact, the Government terminated the contract for convenience because MG Construction failed to take action on the issued Delivery Orders. Due to the termination for convenience, there were no requirements during the last option year of the contract. Further, since there was no work completed or services provided by MG Construction during the last option year, there can be no profit or anticipatory profit earned by or owed to M.G. Construction. The claims under this paragraph for $117,032.92 are denied in whole.

11. This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals (Armed Services Board of Contract Appeals, Skyline 6, 7th Floor, 5109 Leesburg Pike, Falls Church, VA 22041-3208) and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision (FAR 33.211 (a)(4)(v)).

12. Please address any questions or comments concerning this matter to the undersigned at (307) 773-3689, fax (307) 773-4636.

Carroll M. Vye

CARROLL M. VYE
Contract Officer

Cc: Yazbeck, Cloran, and Hanson

TOTAL P.05