IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| M G CONSTRUCTION, INC. | ) | |
| | ) | No. 04-cv-00473-MBH |
| Plaintiff, | ) | (Judge Horn) |
| vs. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**

Plaintiff M.G. Construction, Inc. ("M. G. Construction") hereby offers the following memorandum in support of its motion for partial summary judgment. Since there are no genuine issues of material fact, and since M. G. Construction is entitled to judgment under the plain language of the subject contract, M. G. Construction respectfully requests that the Court award partial summary judgment in its favor and against the United States, holding that the United States must pay M. G. Construction $1.50 per square foot ("SF") for each SF of aggregate surfacing removed. As ordered by the Court, Plaintiff, on behalf of both parties, is also simultaneously submitting 1) Joint Statement of Issues of Law, 2) Joint Stipulations of Uncontroverted Fact, and 3) Appendix.

**<u>Summary of Argument</u>**

The parties are requesting that the Court perform an interpretation of the parties' contract. While the stipulated facts and its appendix may seem sparse, such facts and appendix actually contain all the information needed for the Court to correctly interpret the contract. A "BUR" roof is a "built up roof" that consists of multiple layers, including, from bottom to top, a layer of vapor barrier, a layer of insulation, a layer of roof membrane plys, and a layer of aggregate

surfacing. During contract performance, MG Construction, as part of the demolition of the existing roofs, removed 243,100 SF of aggregate surfacing from existing BUR roofs. It is the position of MG Construction that, under the Bid Schedule created by the USAF, the removal of aggregate surfacing is a separate line item. It is the position of the USAF that the aggregate removal is included within another bid item.

The USAF created the Bid Schedule. When bidding this project, MG Construction was repeatedly referred to the Bid Schedule to find a breakdown of the work to be performed. There is no detailed specification for demolition. The Bid Schedule in fact did provided such a breakdown of the demolition work. Under demolition, the removal of aggregate surfacing was a separate line item. There was also a separate line item for removing up to 5 plys of roofing membrane and up to 2" of mopped insulation. MG Construction bid $1.50/SF to remove the aggregate surfacing and $.80/SF to remove up to 5 plys of the roofing membrane and 2" of mopped insulation. MG Construction is entitled to $1.50 for each SF of aggregate surfacing removed.

**Summary Judgment Standards**

Summary judgment is appropriate “if ...there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. RCFC 56(c); *National Westminister Bank, PLC. v. United States*, 58 Fed.Cl. 491, 496 (2003). Here, as shown by the parties joint stipulation of fact, there are no genuine issues of material fact which would preclude summary judgment. As agreed upon by the parties, the legal issue to be decided by the Court requires the Court to interpret the contract as to whether MG Construction is entitled to payment for aggregate surfacing removal under the line item “Remove Aggregate Surfacing” (as claimed

by MG Construction) or under line item "Remove BURS (5-ply max) & 2" Insulation (2" Mopped)" (as claimed by the USAF).

**Contractual Interpretation and Summary Judgment**

Interpretation of the terms of a government contract is a question of law to be decided by the Court. *See CW Governmaent Travel, Inc. v. United States*, 61 Fed.Cl. 559, 571 (2004) (*citing Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed.Cir. 1985)). The United States Court of Appeals for the Federal Circuit repeatedly has held that contract interpretation is a question of law generally amenable to summary judgment. *See TLT Construction Corp. v. United States*, 60 Fed.Cl. 187, 193-94 (2004). When interpreting a contract, the Court is required to give the language of the contract its plain and ordinary meaning. *See Cherry Hill Sand & Gravel Co., Inc. v. U.S.*, 8 Cl.Ct. 757, 764 (1985). The contract must be considered as a whole and interpreted so as to give meaning to all of its provisions. *Id.* An interpretation which gives a reasonable meaning to all parts of the contract is preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result. *See State of Ariz. v. U.S.*, 575 F.2d 855, 863 (Ct.Cl. 1978). If the Court is presented with what it considers opposing reasonable constructions, the Court is to construe the contract against its drafter, the United States. *See Turner Construction Co., Inc. v. U.S.*, 367 F.3d 1319, 1321 (CA Fed 2004).

**Back Ground**

Mr. Garcia is an immigrant to this country. He applied for and received his citizenship between 1989 and 1992. English is his second language. He is the proud owner of a minority-owned construction business, MG Construction, Inc., a business organized under the laws of the

sovereign State of Oregon. The "MG" comes from its owner's name, Miguel Garcia. Due to his status, during all applicable times, MG Construction qualified as and was in fact a minority owned business eligible for government set-aside contracts, commonly referred to as an "8A" business. MG Construction does roofing, its all they really do. The contract at issue was just such a contract, a set-aside for 8A businesses. *See* Joint Stipulation of Uncontroverted Fact (hereinafter "Joint Stipulation"), ¶1.

The United States, by and through the United States Air Force ("USAF"), issued Solicitation Number F48608-01-R-001 for Project Number GHLN 01-1004, known as the Roof Requirements Contract for the Air Force Space Command at the F.E. Warren Air Force Base, Wyoming. *See* Joint Stipulation, ¶1. The work required repairing or replacing existing roofing on various base buildings. *See* Joint Stipulation, ¶2. The work included the demolition and removal of existing roofing, including a line item for aggregate surfacing removal. *See* Joint Stipulation, ¶3, 6.

In multiple instances, the bidder was referred to the Bid Schedule provided by the Government for actual breakdown of bid items. *See* Joint Stipulation, ¶3, 4. The solicitation required a bidder to provide a proposal for each of the bid items described in the Bid Schedule. *See* Joint Stipulation, ¶4. The Bid Schedule required bidders to provide a "UNIT PRICE" per "SF" (square foot) for "Remove Aggregate Surfacing" for "BUR & EPDM" under "Demolition." *See* Joint Stipulation, ¶6. The United States estimated the quantity of aggregate surfacing that needed to be removed at "200" SF. *See* Joint Stipulation, ¶6.

When demolishing an existing BURS roof, one must first remove the aggregate surfacing, then the multiple plys of roofing membrane, then the insulation. *See* Joint Stipulation,

¶5. The aggregate surfacing must be removed so that the exposed plys of roofing membrane can be saw cut for removal. *See* Joint Stipulation, ¶6.

For the contract line item "Remove Aggregate Surfacing," MG Construction bid $1.50 per SF. *See* Joint Stipulation, ¶7. On June 29, 2001, the United States, by and through the USAF, awarded MG Construction, Inc. the contract, numbered F48608-01-D-0008, to perform the roofing work at F.E. Warren Air Force Base. *See* Joint Stipulation, ¶11. In 2002, MG Construction removed 125,800 SF of aggregate surfacing. In 2003, MG Construction removed 117,300 SF of aggregate surfacing. In total, MG Construction removed 243,100 SF of aggregate surfacing. The final amount of aggregate surfacing removal was over 1215 times the estimated amount of 200 SF indicated by the United States in the solicitation. At $1.50/SF, the total amount MG Construction earned was $364,650. Contrary to the plain language of the contract, the USAF has failed to pay for any of the aggregate surfacing removal.

**<u>Argument</u>**

This matter involves a very simple interpretation of the parties contract. Plaintiff MG Construction is not seeking anything more than its bargained-for benefit. This is not a motion based upon changed conditions or extra work. The USAF asked for a hard per-unit price for aggregate surface removal. *See* Exhibit 1. MG Construction provided a hard per-unit price of $1.50 per SF. *See* Exhibit 1.

Under the plain language of the contract, MG Construction is entitled to $1.50 for every SF of aggregate removed. *See* Exhibit 1. Since there are no genuine issues of material fact, and since MG Construction is entitled to judgment under the plain language of the subject contract, MG Construction respectfully requests that the Court award partial summary judgment in its

favor and against the United States, holding that the United States must pay MG Construction $1.50 per SF for each SF of aggregate surfacing removed.

**A. The USAF created the Bid Schedule and repeatedly instructed MG Construction to refer to the Bid Schedule for a breakdown of the work.**

The USAF issued the solicitation at issue in this matter. *See* Joint Stipulation, ¶1. As part of that solicitation, the USAF created and included a "Bid Schedule." The Bid Schedule is included in the Appendix, at pages 3 through 10. MG Construction had no involvement in creating the Bid Schedule. The importance of the Bid Schedule is shown in the specifications. When reviewing the specifications to see what work was included, the bidder was given a repeated instruction. Bidders were instructed to go to the Bid Schedule for a breakdown. *See* Joint Statement, ¶¶2,4. Therefore, at multiple points in the solicitation, the USAF instructed MG Construction to refer to the Bid Schedule for a breakdown of the work, including within specifications for scope and description of bid items.

The contract specifications are included in the Appendix at pages 11 through 69. When reading the specification upon scope, MG Construction was referred to the Bid Schedule for a breakdown of the work. Regarding "SCOPE," the solicitation required M.G. Construction to "[p]rovide all labor, means, operations, materials, sales tax, accessories and incidentals necessary for performing all operations required for repairing or replacing existing roofing on various base buildings...." *See* Appendix, p.15 (1.1 SCOPE A). Regarding scope, the contract instructed M.G. Construction to "[r]efer to Bid Schedule as furnished by the Base Contracting Office for breakdown of bid items." *See* Appendix, p.15 (1.1 SCOPE C) (emphasis added).

When reading the specification describing bid items, MG Construction was again

referred to the Bid Schedule for a breakdown of the work. Regarding "DESCRIPTION OF BID ITEMS," the contract required M. G. Construction to "[p]rovide a proposal for each of the Bid Items described in the Bid Schedule." *See* Appendix, p.25-26 (GENERAL REQUIREMENTS, 1.38 DESCRIPTION OF BID ITEMS, A) (emphasis added). Regarding demolition, the solicitation informed that "[a]ll demolition items shall include all industry standard safety and work practices, proper tools, enclosed chutes, dust control, dumpsters, legal disposal of wastes, etc. [...] [d]emolition items to include associated clean up and preparation / cleaning to support succeeding material installation." *Id.* at D. Once again, M. G. Construction was to "[r]efer to the Bid Schedule provided by the Government for actual breakdown of bid items." *Id.* at D (emphasis added).

In short, the USAF created and consistently referred MG Construction to the Bid Schedule for a breakdown of the work.

MG Construction was required by the USAF to give a price for each item in the Bid Schedule. The solicitation required bidders to complete "Part I - The Schedule, Section B, Supplies or Services and Prices/Costs." This Bid Schedule is the Achilles' Heel of the United States. The Bid Schedule, in plain and simple language, required bidders to provide a "UNIT PRICE" per "SF" (square foot) for "Remove Aggregate Surfacing" under "Demolition." *See* Appendix, P. 3 (CLIN #0001AA). The Bid Schedule did not ask for a lump sum for demolition or a lump sum for removal of aggregate surfacing, it asked for a unit price per SF to remove aggregate surfacing. *Id.*

///

///

**B. The United States' breakdown listed "remove aggregate surfacing" as a separate line item with its own unit price.**

The Bid Schedule, i.e., breakdown, provided by the USAF expressly lists "remove aggregate surfacing" as a separate bid item with its own unit price. A copy of the Bid Schedule is included in the Appendix at pages 3 through 10. The Bid Schedule is broken down into separate sections. *See e.g.* Appendix, p. 3 (e.g., Demolition, Install EPDM Membrane, Install Insulation for EPDM Roofing, etc.). Demolition is a separate bid item. *See* Appendix, p.3 (CLIN # 0001). In fact, as opposed to installation, which is separately stated for both BUR and EPDM roofs, demolition gets its own section which covers both BUR and EPDM roofs. *Id.* There is no specification dedicated solely to demolition, just a few general specifications which deal with demolition in a general manner. *See* Joint Stipulations, ¶4.

Within the Bid Schedule, demolition is subdivided into individual CLINs. *See* Appendix, p.3 (CLIN ## 0001AA through 000AS). It even follows a logical order for the roofing contractor, asking the bidder to provide unit prices for each step of the demolition work. The order of the demolition schedule approximates the linear steps needed to remove a roof. An existing BUR roof is like a layered sandwich. There is a layer of aggregate surfacing (if any) on top, then a layer of roofing membrane plys, then insulation, then a vapor barrier. Appendix, pp. 45-48 (describing the layers installed during BURS installation). For example, to demolish an existing BUR roof, first you have to remove the layer of aggregate surfacing, then you have to remove the plys of roofing material, then insulation. *See* Appendix, p.90 (Supplemental Declaration of Miguel Garcia, ¶2); *see also* Appendix, pp. 45-48. The Bid Schedule, as promised in the specifications, broke demolition down and asked the bidder to supply a unit

price for each step in the BUR removal process. *See* Appendix, p.3

As the reader travels down the USAF supplied breakdown, aggregate removal is followed closely by removal of the roof plys, and then insulation, and so on. As instructed by the bidding documents, MG Construction bid the demolition as it was broken down by the USAF. *See* Appendix, p.3. MG provided unit prices as per the government provided breakdown. *See* Appendix, p.3. To demolish a BUR roof, MG bid $1.50 per sf to remove the aggregate surfacing, $.80 per sf to remove the roof membrane plys and 2" of insulation, and so forth, bidding an amount to do each step in the roof demolition process. *See* Appendix, p.3. By the plain language of the contract, as it was broken down by the USAF, removal of 1 SF of aggregate surfacing cost the government $1.50. *See* Appendix, p.3. Per the plain language and breakdown of the contract, MG Construction is entitled to be paid $1.50 per SF for aggregate surfacing that had to be removed to accomplish the work ordered by the USAF. *See* Appendix, p.3.

**C. The United States' contention that "BURS (5-ply max)" includes aggregate surfacing, roof membrane plys, insulation, vapor barrier underlayment, and flashings is unreasonable.**

**1. There is a separate line item for remove aggregate surfacing.**

From discussions with opposing counsel, it is the position of the USAF, contrary to the logic and detail of the government supplied Bid Schedule breakdown, that the "BURS(max5ply)" language found in CLIN # 0001AC actually includes "aggregate surfacing removal." The USAF argues this even though not 3 lines above this entry, the government broke out and supplied a separate line item for "aggregate surfacing removal" within its

acknowledged breakdown. *See* Appendix, p.3. It is upon this kind of fuzzy logic the USAF asks this Court to allow it to pay MG Construction $.80/SF for two separate steps when MG Construction bid $2.30/SF ($1.50 + $.80) for those two steps. The USAF asked for these steps to be bid separately. MG Construction bid these steps separately. MG Construction is entitled to be paid for these steps separately.

**2. Section 7510 is an installation specification that does not address demolition.**

Opposing counsel has also opined that under specification 7510, the removal of aggregate surfacing is included in "BURS (5-ply max)." Specification 7510 can be found in the Appendix starting at page 42. This position is incorrect under the contract. First, the Bid Schedule supplied by the government, as shown above, breaks out and lists "remove aggregate surfacing" as a separate line item. *See* Appendix, p.3.

Second, Specification 7510 has nothing to do with demolition. It is dedicated solely to BURS installation. *See* Joint Statement, ¶9 ("Section 07510 of the Contract, the specification for installation of "Built-Up Roofing Systems" (emphasis added)). In fact , Section 7510 assumes a clean starting surface with any existing roof having been removed beforehand. *See* Appendix, p.45. There is not one word in Section 7510 that deals with demolition. The specification goes on in exacting detail about BURS installation, not BURS demolition. *See* Appendix, pp.45-48. Specification 7510 simply does not apply under its plain language and purpose and it is unreasonable to seek to apply an installation specification to demolition.

Third, the expansive definition of "BURS" the USAF advances does not make sense when applied to the "BUR (5-ply max)" language found in the Bid Schedule. *See* Appendix, p.42 (described as including vapor barrier/insulation/roofing membranes/aggregate surfacing).

The insertion of "(5-ply max)" after BURS specifically and expressly limits BURS. *See* Appendix, p.3. "Ply" clearly is referring to the plys of roof membrane. In addition, in the USAF's argument, the definition of BURS also would include insulation. *See* Appendix, p.42 (described as including vapor barrier/insulation/roofing membranes/aggregate surfacing). However, in the Bid Schedule, insulation is separately stated in the same CLIN as the BURS. *See* Appendix, p.3 ("Remove BURS (5-ply max) & 2" Insulation (2" Mopped)"). Why would the aggregate surfacing be included in "BURS" but insulation, which under the USAF's argument is also supposed to be included, is listed separately? It just does not make sense. It would make the separate listing of insulation in the same CLIN unnecessary and extraneous. By its plain language, Section 7510 does not apply to demolition and its attempted application is illogical and unreasonable.

**3. Delivery orders were issued after contract formation and have no relevance to the parties rights and responsibilities under the already formed contract.**

Lastly, the USAF has argued that the failure of the government to include CLIN 0000AC on delivery orders means that the government does not have to pay for aggregate surfacing removal. The delivery orders are included in the Appendix at pages 70 through 89. Apparently, the USAF argues that it can want a ham sandwich and only must pay for the bread, and does not have to pay for the ham, cheese and condiment. This is an unreasonable argument. The USAF wanted a new roof and the old roof had to be removed so that could happen.

In addition, the delivery orders were issued after contract formation and have nothing to do with whether the contract calls for payment for aggregate surfacing removal as a separate line item. The rights and responsibilities of the parties were established way before any delivery

order was issued. Additionally, the delivery orders instructed MG Construction to put new BUR roofing upon certain buildings. Some of those buildings had existing BUR roofing. You have to remove the aggregate surfacing and other materials before you can put a new roof upon the building. It is necessary work. MG Construction performed work which was necessary to complete the work ordered by the government. MG Construction performed necessary work for which the government had contracted to compensate it at $1.50 per sf.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## Conclusion

There are no disputed issues of material fact which preclude summary judgment. Contract interpretation is a question of law for the Court. Under the plain language of the contract, per the breakdown of work provided by the USAF, when MG Construction removed 1 SF of aggregate surfacing, it became entitled to $1.50. When MG Construction removed 1 SF of the roofing plys and 2" of insulation it became entitled to $.80. Specification 7510 deals only with installation, not demolition. The attempt to apply an expansive definition of "BURS" is unreasonable because it contradicts the breakdown supplied by the USAF and makes language within the same CLIN extraneous and useless. The contract is very clear on this issue. Because there are no genuine issues of material fact and because under the plain language of the contract MG Construction is entitled to $1.50 per SF for each SF of aggregate surfacing removed, MG Construction respectfully requests that this Court grant it summary judgment against the United States upon its first count, remove aggregate surface claim.

DATED this 22th day of April, 2005.

"s/Joseph A. Yazbeck, Jr."
Joseph A. Yazbeck, Jr.
YAZBECK, CLORAN & HANSON, LLC
1300 SW 5th Av.
Suite 2750
Portland, Oregon 97201
(503) 227-1428
Attorney of Record for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of April, 2005, a copy of the foregoing PLAINTIFF'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT was field electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system.

s/ Joseph A. Yazbeck, Jr.