# In the United States Court of Federal Claims

**No. 04-473C**
**Filed: August 4, 2005**

* * * * * * * * * * * * * * * * * * *

**M.G. CONSTRUCTION, INC.,** *

**Plaintiff,** *

**v.** *

**UNITED STATES,** *

**Defendant.** *

* * * * * * * * * * * * * * * * * * *

**Summary Judgment; Contract Interpretation; Ambiguity; Duty to Inquire.**

**JOSEPH A. YAZBECK**, **JR.**, Yazbeck, Cloran & Hanson, LLC, Portland, OR, for the plaintiff.

**JAMES D. COLT**, Trial Attorney; **JAMES M. KINSELLA**, Deputy Director; **DAVID M. COHEN**, Director, Commercial Litigation Branch, Civil Division; **PETER D. KEISLER**, Assistant Attorney General, United States Department of Justice, Washington, DC, for the defendant. **MAJOR LAWRENCE M. ANDERSON**, Air Force Legal Services Agency, United States Air Force, of counsel.

## O P I N I O N

**HORN, J.**

The plaintiff, M.G. Construction, Inc., is an Oregon corporation based in Salem, Oregon. The case arises out of a United States Air Force roof repair and construction contract at the Francis E. Warren Air Force Base in Cheyenne, Wyoming. Initially, when the complaint in the case was filed, only count one of the plaintiff's complaint had been submitted to the contracting officer. The remaining five counts had not been presented to the contracting officer. See 41 U.S.C. § 605(a) (2000) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision."). Therefore, those claims not previously submitted to the contracting officer were dismissed by the court without prejudice. The plaintiff subsequently brought those claims to the agency for a contracting officer's review and final decision. On March 3, 2005, the contracting officer

issued a final decision denying all of the plaintiff's claims. The plaintiff's fourth amended complaint presents seven claims. The parties have filed cross-motions for partial summary judgment on count one, the largest claim contained within the plaintiff's fourth amended complaint.

## FINDINGS OF FACT

On February 16, 2001, the United States, acting through the United States Air Force, issued Solicitation No. F48608-01-R-001 for Project No. GHLN 01-1004, referred to as the Roof Requirements Contract for the Air Force Space Command at Francis E. Warren Air Force Base in Cheyenne, Wyoming. The contract was a Small Business Administration (SBA) 8(a) set-aside.[1] The solicitation, incorporated into the contract, required bidders to "[p]rovide all labor, means, operations, materials, sales tax, accessories and incidentals necessary for performing all operations required for repairing or replacing existing roofing on various base buildings . . . . " In addition, the bidders were instructed to refer to the Bid Schedule for a complete breakdown of bid items and to provide a proposal for each bid item in the Bid Schedule. The bidders also were instructed that the work encompassed the demolition and removal of existing roofing, including all "[r]elated or incidental work which is manifestly necessary or customary to finish the project and provide a complete installation," as necessary. In this regard, the solicitation provided that, "[t]he description for each [bid] item is a 'scope description,' incomplete and abbreviated, and does not detail the full range of materials and processes needed to complete the required work."

The solicitation required bidders to complete "Part I–The Schedule, Section B, Supplies or Services and Prices/Costs." Therefore, the plaintiff was required to provide a unit price per square foot for the individual Contract Line Item Numbers (CLINs), for example, to Remove

---

[1] The original Small Business Act of 1953, Pub. L. No. 53-163, Title II, 67 Stat. 232 (1953), did not contain a "section 8(a)." However, section 207(c) and section 207(d) empowered the SBA to enter into contracts with government agencies and to subcontract to small business concerns, 67 Stat. at 236. An amendment to the Small Business Act added section 8(a) and provided that the SBA could enter into contracts with government agencies and subcontract to small business concerns. Pub. L. No. 85-536, § 2, 72 Stat. 384, 389 (1958) (adding § 8(a)(1) & (2)). In 1978, section 8(a)(1)(C) was amended to include language, for the first time, which provided that the SBA could subcontract with "socially and economically disadvantaged small business concerns," Pub. L. No. 95-507, Title II, § 202(a), 92 Stat. 1760, 1761 (1978). "Section 8(a)" is codified at 15 U.S.C. § 637(a)(1)(B) (2000).

Aggregate Surfacing (CLIN 0001AA). The Air Force estimated the quantity of aggregate surfacing that might need to be removed at 200 square feet and included this figure in CLIN 0001AA. M.G. Construction bid $1.50 per square foot to remove aggregate surfacing pursuant to CLIN 0001AA. The Bidding Schedule also required the plaintiff to bid prices for a series of other demolition tasks, including CLIN 0001AC, Remove BURS [2] (5-ply max) & 2" Insulation (2" Mopped), for which the plaintiff bid $0.80 per square foot, on a government estimate of 23,333 square feet, and Remove Underlayment/Vapor Barrier, CLIN 0001AH, for which the plaintiff bid $15.00 per square.

In providing specifications for the construction and repair of the roofing system, the solicitation, incorporated into the contract language, stated that "[t]he entire roofing system, excluding aggregate surfacing, shall be finished in one operation . . . ." The solicitation also provided that "[t]he Government will identify work to be accomplished by the Delivery Order method." Pursuant to the contract, delivery orders placed against the contract included CLIN 0001AC (BURS removal), but not CLIN 0001AA (aggregate surfacing removal). The contract specified that any and all changes to the contract must be enacted solely through the contracting officer.

On June 29, 2001, the plaintiff contractor entered into a contract (Contract No. F48608-01-D-0008) with the United States Air Force to perform the roofing work at Francis E. Warren Air Force Base, Cheyenne, Wyoming. The basic contract period lasted for one year from its award date. The contract required M.G. Construction to remove, repair, and replace existing roofs on select Air Force base buildings. Section 1 of the solicitation, incorporated into the contract, contained twenty-one contract line item numbers, or "CLINs," which detailed the assorted tasks required to complete the roofing project and the prices plaintiff had bid for those CLINs. The CLINs were divided into three categories, specifically, demolition, install EPDM (Ethylene Propylene Diene Monomer) membrane and install insulation for EPDM roofing.

M.G. Construction was asked to perform the demolition of BURS, which, according to the BURS installation specifications found in the solicitation, entailed the removal of the roof aggregate surfacing, the multiple plys of the roofing membrane, and the insulation. For

---

[2] As described by the plaintiff in its brief in support of its motion for partial summary judgment, a "BURS," or Built-Up Roofing System, consists of various layers, including, in order from bottom to top, a vapor barrier layer, an insulation layer, a layer of roofing membrane, and an aggregate surfacing layer. Section 07510 of the contract, which specifies the installation of "Built-Up Roofing Systems," states: "assembly of components consisting of the underlayment and insulation as applicable, and roofing membrane, final surfacing, bituminous and metal flashings, and all related parts necessary to complete the assembly." In addition, in the "System Description" listed in Section 07510, a Built-Up Roofing System is listed as a "[f]our ply asphalt membrane system with insulation, and aggregate surfacing."

selected buildings, the solicitation contemplated "partial roof replacement," without the necessity of demolishing the entire roof for a complete roof replacement, as required on other buildings. The plaintiff also bid different monetary amounts for removing and replacing various parts of the roof without full BURS removal, such as aggregate surfacing (CLIN 0001AA), sealant (CLIN 0001AL), insulation (CLINs 0001AF, 0001AG), and flashing (CLIN 0001AJ).

The parties have filed cross-motions for partial summary judgment only with respect to the first claim of the plaintiff's fourth amended complaint. The plaintiff claims, and the government acknowledges, that it removed 243,100 square feet of surface aggregate (gravel), and that the plaintiff was paid at the BURS removal rate ($.80 per square foot under CLIN 0001AC). Plaintiff claims that it also should have been paid under the separate aggregate surfacing removal rate ($1.50 per square foot under CLIN 0001AA), for a total of $2.30 per square foot. Plaintiff seeks $364,650.00 for count one (243,100 square feet times $1.50 per square foot).

## DISCUSSION

The parties have filed cross-motions for summary judgment on the plaintiff's fourth amended complaint pursuant to RCFC 56. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); Avenal v. United States, 100 F.3d 933, 936 (Fed. Cir. 1996), reh'g denied (1997); Creppel v. United States, 41 F.3d 627, 630-31 (Fed. Cir. 1994). A fact is material if it will make a difference in the result of a case under the governing law. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48; see also Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959), reh'g denied, 361 U.S. 941 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; see, e.g., Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact); Johnson v. United States, 49 Fed. Cl. 648, 651 (2001), aff'd, 317 F.3d 1331 (Fed. Cir. 2003); Becho, Inc.

v. United States, 47 Fed. Cl. 595, 599 (2000). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-52; Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979, 982 (Fed. Cir.), reh'g denied and en banc suggestion declined (1993). When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Summary judgment:

> saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

Dehne v. United States, 23 Cl. Ct. 606, 614-15 (1991) (citing Pure Gold, Inc. v. Syntex, Inc., 739 F.2d 624, 626 (Fed. Cir. 1984)), vacated on other grounds, 970 F.2d 890 (Fed. Cir. 1992); see also United States Steel Corp. v. Vasco Metals Corp., 394 F.2d 1009, 1011 (C.C.P.A. 1968).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir. 2001), cert. denied, 534 U.S. 1109 (2002); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir.), reh'g denied and en banc suggestion declined (1998).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Trilogy Communications, Inc. v. Times Fiber Communications, Inc., 109 F.3d 739, 741 (Fed. Cir.) (quoting Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994)), reh'g denied and en banc suggestion declined (1997); Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1569 (Fed. Cir. 1997). If the

moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. at 322; Am. Airlines, Inc. v. United States, 204 F.3d 1103, 1108 (Fed. Cir. 2000); see also Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1207 (Fed. Cir. 2001).

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. Celotex Corp. v. Catrett, 477 U.S. at 324. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party must go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. Id.

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case. Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)); Chevron USA, Inc. v. Cayetano, 224 F.3d 1030, 1037 n.5 (9th Cir. 2000), cert. denied, 532 U.S. 942 (2001). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." LewRon Television, Inc. v. D.H. Overmyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968), cert. denied, 393 U.S. 1083 (1969); see also B.F. Goodrich Co. v. United States Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001); Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other necessarily is justified. B.F. Goodrich Co. v. United States Filter Corp., 245 F.3d at 593; Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000); Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 2 (1st Cir. 1998); Reading & Bates Corp. v. United States, 40 Fed. Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1322 (Fed. Cir. 2001); Gart v. Logitech, Inc., 254 F.3d 1334, 1338-39 (Fed. Cir. 2001), cert. denied, 534 U.S. 1114 (2002).

Contract interpretation is a question of law, which poses an appropriate question for summary judgment resolution. See H.B. Mac, Inc. v. United States, 153 F.3d 1338, 1345 (Fed. Cir. 1998) (stating that matters of contract interpretation are questions of law); Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1305 (Fed. Cir.), reh'g denied and en banc suggestion declined (1996); C.W. Over & Sons, Inc. v. United States, 54 Fed. Cl. 514, 520 (2002). In the present case, both parties believe that there are no material facts in dispute. The parties have filed joint stipulations of facts with supporting documents, and cross-motions for partial summary judgment with supporting briefs and exhibits. The court concurs with the parties that

there are no material facts in dispute, and that no additional facts are necessary to resolve the issue presented with respect to count one of plaintiff's complaint. Therefore, the issue is appropriate for summary judgment resolution.

The issue to be resolved is whether the government is obligated to compensate the plaintiff for aggregate surfacing removal under CLIN 0001AA, Remove Aggregate Surfacing, or if the type of work was covered under the contract under CLIN 0001AC, Remove BURS (5-ply max) & 2" insulation (2" Mopped), for which the parties agree that the government has already compensated the plaintiff at a rate of $0.80 per square foot for a total of 243,100 square feet. At the core of this dispute lies each party's interpretation of the contract language, including these two contract line item numbers.

Both parties acknowledge that the contract's language provides: "[t]he Government will identify work to be accomplished by the Delivery Order method." In addition, the solicitation and plaintiff's bid prices were incorporated into the contract, as provided in the solicitation Schedule. The relevant portions of that Schedule are as follows:

**PART I – THE SCHEDULE**
**SECTION B**
**SUPPLIES OR SERVICES AND PRICES/COSTS**

**BUR & EPDM**
**Reference Specifications 7510, 7530, 7559, 7620, 7631**

| CLIN # | Description | Est. Quantity | Unit | Unit Price | Est. Amount |
|---|---|---|---|---|---|
| 0001 | | DEMOLITION | | | |
| 0001AA | Remove Aggregate Surfacing | 200 | SF | 1.50 | [$]300.00 |
| 0001AC | Remove BURS (5-ply max) & 2" Insulation (2" Mopped) | 23,333 | SF | .80 | 18,666.40 |
| 0001AF | Remove Rigid Insulation (2" thick) | 167 | SQ | 25.00 | 4,175.00 |
| 0001AG | Remove Rigid Insulation (4" thick) | 167 | SQ | 30.00 | 5,010.00 |

| | | | | | |
|---|---|---|---|---|---|
| 0001AH | Remove Underlayment/ Vapor Barrier | 22 | SQ | 15.00 | 330.00 |

The elements of an express contract are "a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." Total Medical Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir.) (citations omitted), cert. denied, 522 U.S. 857 (1997). The United States Court of Appeals for the Federal Circuit stated in Jowett, Inc. v. United States:

> In interpreting a contract, we begin with the plain language. We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning. In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense.

Jowett, Inc. v. United States, 234 F.3d 1365, 1368 (Fed. Cir. 2000) (citations omitted); see also Hunt Constr. Group, Inc. v. United States, 281 F.3d 1369, 1372 (Fed. Cir. 2002) ("We begin with the plain language when interpreting a contract . . . . The contract must be considered as a whole and interpreted to effectuate its spirit and purpose, giving reasonable meaning to all parts.") (citations omitted); Giove v. Dep't of Transp., 230 F.3d 1333, 1340-41 (Fed. Cir. 2000) ("In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense. Further, business contracts must be construed with business sense, as they naturally would be understood by intelligent men of affairs.") (citations omitted); Foley Co. v. United States, 11 F.3d 1032, 1034 (Fed. Cir. 1993) (finding that contract interpretation starts with analysis of the language of the written agreement); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991) (clarifying that a preferable interpretation of a contract is one that gives meaning to all parts of the contract rather than one that leaves a portion of the contract "useless, inexplicable, void, or superfluous"); Hol-Gar Mfg. Corp. v. United States, 169 Ct. Cl. 384, 388, 351 F.2d 972, 975 (1965) (The language of the "contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances.").[3]

---

[3] In Banknote Corporation of America v. United States, the court stated that: "The principles governing interpretation of Government contracts apply with equal force to the interpretation of solicitations issued by the Government for such contracts. See, e.g., Grumman Data Sys. [Corp. v. Dalton,] 88 F.3d [990,] 997-98 [(Fed. Cir. 1996)] (interpreting a solicitation using contract interpretation rules)." Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345,1353 n.4 (Fed. Cir. 2004).

When the terms of a contract are clear and unambiguous, there is no need to resort to extraneous circumstances for its interpretation. See McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir.), reh'g denied and en banc suggestion declined (1996); City of Tacoma, Dep't of Pub. Utils. v. United States, 31 F.3d 1130, 1134 (Fed. Cir. 1994) ("Outside evidence may not be brought in to create an ambiguity where the language is clear."); Interwest Constr. v. Brown, 29 F.3d 611, 615 (Fed. Cir. 1994) ("'[E]xtrinsic evidence to change the terms of a contract that is clear on its face' may not be considered by a tribunal."); Sea-Land Serv., Inc. v. United States, 213 Ct. Cl. 555, 567, 553 F.2d 651, 658 (1977), cert. denied, 434 U.S. 1012 (1978). But, if an ambiguous or uncertain writing can only be understood upon consideration of the surrounding circumstances, extrinsic evidence will be allowed to interpret the language. See Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375 (Fed. Cir. 2004) (holding that extrinsic evidence is permissible to interpret an ambiguous contract); Sylvania Elec. Prods., Inc. v. United States, 198 Ct. Cl. 106, 126, 458 F.2d 994, 1005 (1972); Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 662 (2003).

The court, therefore, first must ascertain whether the language at issue was ambiguous or supports one particular interpretation. See NVT Tech., Inc. v. United States, 54 Fed. Cl. 330, 335 (2002) (finding that the threshold question is whether the solicitation is ambiguous), aff'd, 370 F.3d 1153 (Fed. Cir. 2004). The United States Court of Appeals for the Federal Circuit has stated that "[t]o show an ambiguity [in contract language,] it is not enough that the parties differ in their respective interpretations of a contract term." NVT Tech., Inc. v. United States, 370 F.3d at 1159. In order to demonstrate ambiguity, the interpretations offered by both parties must fall within a "zone of reasonableness." Id. (quoting Metric Constructors, Inc. v. NASA, 169 F.3d 747, 751 (Fed. Cir. 1999)). The Court of Appeals for the Federal Circuit also has indicated that "a proper technique of contract interpretation is for the court to place itself in the shoes of a reasonable and prudent contractor and decide how such a contractor would act in interpreting the contract." H.B. Mac, Inc. v. United States, 153 F.3d at 1345.

Both parties maintain that the solicitation and contract language fully support their respective positions and views. Both parties also have represented that the language of the contract is not ambiguous. Furthermore, the defendant indicates that there were no promises or mutual understandings regarding rights and obligations among the parties other than those contained in the contract, and the plaintiff offers no controverting information. As discussed more fully below, the court agrees with the parties that the contract is not ambiguous.

M.G. Construction argues that its interpretation of the solicitation Schedule is a harmonious interpretation of the numerous CLIN items identified for separate, distinct phases of the BURS demolition process. The plaintiff argues that the solicitation Schedule directs that, in demolishing a BURS roof, it should be paid $0.80 per square foot to remove the roofing membrane 5-plys and 2" insulation under CLIN 0001AC, and $1.50 per square foot to remove aggregate surfacing under CLIN 0001AA, with each step in the roofing demolition process given its own CLIN and payment scheme. Plaintiff states that the Schedule did not ask for a lump sum for demolition or a lump sum for removal of aggregate surfacing, but,

rather, asked for a unit price per square foot to remove aggregate surfacing. In preparing its bid, plaintiff points out that it read the language in CLIN 0001AC, Remove BURS (5-ply max) & 2" Insulation (2" Mopped), as expressly limiting the materials to be removed under CLIN 0001AC to the roofing membranes and 2" insulation. The plaintiff states that it did not bid only $.80 per square foot for CLIN 0001AC to remove all four layers of the BURS. Plaintiff argues that it bid on each of these roofing refurbishment steps separately (CLINs 0001AA, 0001AB, 0001AC, etc.) and performed the contract accordingly. Although the plaintiff has already been paid $.80 per square foot for BURS removal under CLIN 0001AC, plaintiff now claims an additional $1.50 per square foot for aggregate surfacing removal, for a total of $2.30 per square foot, a number which appears nowhere on the Schedule.

According to the plaintiff, if the government had wanted BURS to be read as all inclusive, it should not have separated out individual components in the Schedule. By not explicitly including the other two components of the roofing system (aggregate surfacing and vapor barrier) in CLIN 0001AC, M.G. Construction argues that the government meant to exclude those layers from CLIN 0001AC and that an expansive definition of BURS within CLIN 0001AC is "patently unreasonable." M.G. Construction argues that the government's interpretation, in effect, makes CLIN 0001AA (remove aggregate surfacing) meaningless and that, unlike the separate CLINs for BURS components such as aggregate surfacing (CLIN 0001AA), insulation (CLINs 0001AF and 0001AG) and underlayment/vapor barrier (CLIN 0001AH), there is no other CLIN that addresses solely the removal of the fourth BURS component, the membrane plys. Moreover, M.G. Construction contends that there is no detailed specification for demolition, as there is for installation. In regard to specification 07510, an installation specification that defines BURS to include aggregate surfacing, the plaintiff argues that this specification refers to installation protocol and has nothing to do with the demolition process. However, plaintiff orally has acknowledged at a status conference that the BURS components detailed in the installation specifications are the same as the BURS components involved in demolition.[4]

Claiming that count one of plaintiff's complaint does not involve a claim by plaintiff based upon changed conditions or extra work but, rather, that plaintiff is seeking "its bargained-for benefit," M.G. Construction states that when bidding on the contract, it provided a "hard per-unit price of $1.50 per SF" in response to the Air Force's request for a unit price for aggregate surfacing removal. The plaintiff also argues that the final amount of aggregate surfacing it removed (243,100 square feet) was over 1215 times the estimated amount of 200 square feet indicated by the Air Force in the solicitation.

The defendant responds that M.G. Construction's interpretation is unreasonable and invalid because it is inconsistent when read with the other language in the solicitation,

---

[4] The plaintiff also acknowledges, in its April 22, 2005 brief, that "[a]n existing BUR roof is like a layered sandwich. There is a layer of aggregate surfacing (if any) on top, then a layer of roofing membrane plys, then insulation, then a vapor barrier."

incorporated into the contract. The terms of the solicitation establish that individual contract line item numbers only would be activated when the government issued an appropriate delivery order for specific work to be performed. The defendant argues that when it required the complete removal of a BURS roof, it contracted for labor under specific CLIN items, in this case CLIN 0001AC, Remove BURS (5-ply max) & 2" Insulation (2" Mopped). Both parties acknowledge that the government never issued a delivery order for M.G. Construction to perform aggregate surfacing removal in accordance with separate CLIN 0001AA, for which the plaintiff now demands payment under count one of its complaint. According to the defendant, the government had the option to activate or not activate individual CLIN numbers and it would have activated CLIN 0001AA (Remove Aggregate Surfacing), or another particular component's contract line item number, only when partial removal of roofing components was necessary. Both parties agree that roof aggregate is part of the built-up roofing system (BURS) removal and that BURS removal cannot be fulfilled or completed without aggregate removal, since the aggregate surfacing removal allows for the exposed plys of the roofing membrane to be saw cut for removal.

According to the defendant, "[t]he fact that a broader CLIN necessitated work described by a more narrowly-defined CLIN does not mean that M.G. Construction is entitled to be paid under the more narrowly-defined CLIN. It was never assigned work under the narrowly-defined CLIN, and it received payment for performing the broader CLIN." Once again, in this regard, both parties acknowledge that work was to be conducted pursuant to delivery orders and that a delivery order was issued for CLIN 0001AC (BURS removal), but not for CLIN 0001AA (aggregate surfacing removal). Both parties agree that the government paid the plaintiff for the approximately 243,110 square feet of aggregate surfacing which was removed, to include comparable amounts of membrane, insulation, and vapor barrier, at a bid price of $0.80 per square foot under CLIN 0001AC.

Next, the government contends that M.G. Construction's interpretation is contrary to the terms and definitions contained in the solicitation and contract. Specifically, the government highlights Section 07510, titled "Built-Up Roofing Systems," which provides a "system description" of the built-up roofing system: "Four ply asphalt membrane system with insulation, and aggregate surfacing."[5] Moreover, through the supplemental declaration of M.G. Construction owner and president Miguel Garcia, the plaintiff acknowledges that: "When demolishing a BUR [sic] roof, first you have to remove the aggregate surface, then the multiple plys of the roofing membrane, then the insulation. The aggregate must be removed so that the exposed plys of membrane can be saw cut for removal." Furthermore, both parties have stipulated, consistent with Mr. Garcia's declaration, that demolishing a BURS roof involves first removing the aggregate surfacing, then the multiple plys of the roofing membrane, then the insulation. The defendant, therefore, argues that M.G. Construction is entitled to be paid

[5] As stated in the Statement of Work, "The work to be performed shall consist of, but is not necessarily limited to, the following principal features: (A). Demolition and removal of existing roofing."

at the rate of $0.80 per square foot to remove the roofing membrane, insulation, and aggregate surfacing, and because the plaintiff has been paid $0.80 per square foot for the work at issue, the plaintiff is entitled to no further payment.

The government also argues that the terms of the solicitation were designed to allow the government to order spot removal of roof components, short of total roof demolition. The pre-award estimate of the square footage of work that might be ordered pursuant to CLIN 0001AA (estimated removal of 200 square feet of aggregate surfacing) was less than one percent of the estimated total square footage of BURS removal that the government initially estimated it might order (estimated removal of 23,333 square feet of BURS). According to the defendant:

> Given that the CLIN for removal of the built-up roof system was estimated at a size more than 100 times larger than the CLIN for aggregate removal alone, it was unreasonable for the contractor to submit a bid based upon any interpretation other than that the aggregate removal CLIN was to have been employed more sparingly for spot removal of roof aggregate, rather than used in conjunction with the Government-ordered BURS removal CLIN.

Plaintiff has not disputed defendant's "one percent" estimate. The defendant argues that the wide disparity between square foot estimates, alone, highlights that it was unreasonable for the plaintiff to interpret the solicitation as providing that it would be compensated under both CLINs 0001AA and 0001AC for the removal of various BURS layers (e.g., for removal of aggregate surfacing under CLIN 0001AA, estimated at only 200 square feet and removal of roofing membrane under CLIN 0001AC, estimated at 23,333 square feet).

Finally, the government highlights another inconsistency it identifies in the plaintiff's position. The solicitation and bid schedule include CLINs for removal of other roof components that had to be removed when performing BURS demolition, such as CLIN 0001AH (Removal of Underlayment/Vapor Barrier). In its brief in support of partial summary judgment, plaintiff acknowledges that a "built-up roof" includes "a layer of vapor barrier." The plaintiff has not sought separate payment for CLIN 0001AH (Removal of Underlayment/Vapor Barrier) in the course of its four amended complaints. The plaintiff, instead, has sought compensation for only one included task of BURS roof removal, CLIN 0001AA (Remove Aggregate Surfacing). If M.G. Construction believed that CLIN 0001AC, BURS removal, only included insulation and membrane removal, and not aggregate surfacing (CLIN 0001AA) and vapor barrier (CLIN 0001AH) removal, then logically it would have made a claim not only for CLIN 0001AA (aggregate surfacing removal), but also for CLIN 0001AH (vapor barrier removal).

Upon consideration of the briefs of the parties and a careful and detailed review of the entire record presented in this matter, the court finds that both interpretations of the solicitation Schedule, incorporated into the contract, by the parties do not fall within a "zone of reasonableness," as set out in NVT Technologies, Inc. v. United States, 370 F.3d at 1159. The court finds only the government's interpretation of the various sections of the contract language taken together to be reasonable. Plaintiff seeks payment under CLIN 0001AA, a

CLIN that was never activated. The contract clearly stated and the parties have stipulated that: "[t]he Government will identify work to be accomplished by the Delivery Order method." The government did not issue any delivery orders for or make any payments under CLINS 0001AA, 0001AF, or 0001AH. Also, since BURS is defined in the solicitation and contract materials to include aggregate surfacing, and plaintiff acknowledges that inclusion, the plaintiff's interpretation of CLIN 0001AC is in direct conflict with the "BURS" definition provided. By listing CLIN 0001AC as Remove BURS (5-ply max & 2" Insulation (2" Mopped)), the court finds that the government did not change the definition of a BURS roof by using such language, but, rather, was limiting the removal of roofing membrane to a "5-ply max," and limiting the removal of insulation to "2" mopped insulation." In places where BURS removal involved different insulation, for example, the government could have activated either CLIN 0001AF, Remove Rigid Insulation (2" thick), or 0001AG, Remove Rigid Insulation (4" thick), each with its own separate compensation scheme. Moreover, logically, the government listed CLINs 0001AA and 0001AC in the solicitation, with such enormous disparities between the government estimates offered (200 square feet versus 23,333 square feet, respectively), in order to provide for spot removal of BURS components, such as aggregate surfacing, if necessary.

M.G. Construction's interpretation of the solicitation language and CLIN numbers is neither reasonable nor logical, given the interdependent language of the relevant sections of the solicitation and contract, the wide disparities between estimated quantities listed in the solicitation (23,333 square feet estimated for CLIN 0001AC and 200 square feet estimated for CLIN 0001AA), and the lack of any delivery order issued for CLIN 0001AA (Remove Aggregate Surfacing).

The court also finds that the individual line items, such as CLIN 0001AA, were not meant to be incrementals, each to be activated for completion of the whole roof, since the estimate for CLIN 0001AC, BURS removal, 23,333 square feet, was so vastly different from that for CLIN 0001AA, aggregate surfacing removal, 200 square feet. The plaintiff argues, metaphorically, that, "[a]pparently, the USAF [Air Force] argues that it can want a ham sandwich and only must pay for the bread, and does not have to pay for the ham, cheese, and condiment." However, continuing the sandwich metaphor, the court notes that when the Air Force ordered a "sandwich" (BURS removal under CLIN 0001AC), it necessarily ordered the components of that sandwich as well, for example, all of the layers/components of BURS in this case, at one time and not incrementally, piece-by-piece, at a higher cost. It was not inconsistent for CLIN 0001AC, BURS removal, to include the removal of aggregate surfacing as a component of BURS demolition and for the government to issue a delivery order only for CLIN 0001AC. The solicitation and contract were not ambiguous and the government's interpretation and issuance of delivery orders were in accordance with the contract. Having completed the work, the plaintiff cannot now, much later, try to renegotiate the contract.

The court has found that the defendant's interpretation of the contract language in the solicitation Schedule was the proper and reasonable interpretation. If, however, M.G. Construction's interpretation of the solicitation also had been deemed to be reasonable (see

NVT Technologies, Inc. v. United States, 370 F.3d at 1159), such that there was ambiguity in the solicitation language, that ambiguity should have been facially apparent (patent) to the plaintiff prior to submitting a bid on the solicitation. If the item or terms were ambiguous to the contractor when responding to the solicitation, then the non-drafting party, the plaintiff, had a duty to inquire in order to clarify the meaning of apparent discrepancies, omissions, inconsistencies, conflicts, or ambiguities in proposed contractual language and terms.[6] See Turner Constr. Comp. v. United States, 367 F.3d at 1321; White v. Edsall Constr. Co., Inc., 296 F.3d 1081, 1085 (Fed. Cir. 2002); P.R. Burke Corp. v. United States, 277 F.3d 1346, 1355-56 (Fed. Cir. 2002) (clarifying that a patent ambiguity will be construed against a contractor unless they have inquired about the proper meaning of the terms in dispute); Fort Vancouver Plywood Co. v. United States, 860 F.2d 409, 414 (Fed. Cir. 1988). The duty to inquire starts at the pre-award phase, at a time when the parties are able to take prophylactic action. Even if the contractor raises discrepancies with the contracting officer after the contractor commenced performance of the contract, that would be too late.

In describing the contractor's duty to inquire into patent ambiguities, the United States Court of Appeals for the Federal Circuit has stated in NVT Technologies, Inc. v. United States:

> An ambiguity will only be construed against the government if it was not obvious on the face of the solicitation and reliance is shown. If the ambiguity is patent, it triggers a duty to inquire. A patent ambiguity is one that is "obvious, gross, [or] glaring, so that plaintiff contractor had a duty to inquire about it at the start." If an ambiguity is obvious and a bidder fails to inquire with regard to the provision, his interpretation will fail.

NVT Tech., Inc. v. United States, 370 F.3d at 1162 (internal citations omitted); see also Flexible Metal Hose Mfg. Co. v. United States, 4 Cl. Ct. 522, 528 (1984) ("The contractor had a duty to inquire about the [issue] prior to the award rather than after the award."), aff'd, 765 F.2d 156 (Fed. Cir. 1985).[7]

There is no indication in the record that plaintiff M.G. Construction made any attempt to clarify the meaning of the contract, including regarding the Schedule which encompassed the various CLIN designations or other sections of the contract. A possible discrepancy between

---

[6] This duty to inquire would be at issue even though courts normally construe an ambiguous contract term against the party who drafted it. See Turner Constr. Co., Inc. v. United States, 367 F.3d 1319, 1321 (Fed. Cir. 2004); P.R. Burke Corp. v. United States, 277 F.3d at 1355.

[7] The United States Court of Appeals for the Federal Circuit also has indicated that: "[a] contractor's interpretation of a latent ambiguity will only be adopted if it is found to be reasonable." P.R. Burke Corp. v. United States, 277 F.3d at 1356 (quoting Cmty. Heating & Plumbing v. Kelso, 987 F.2d 1575, 1579 (Fed. Cir. 1993) (citing Froeschle Sons, Inc. v. United States, 891 F.2d 270, 270 (Fed. Cir. 1989)).

the contract line item numbers should have been the subject of an inquiry if the plaintiff did not understand the interaction between these separate CLIN entries, especially in light of the other sections of the solicitation language. Similarly, the distinctiveness of the low estimates in the solicitation Schedule for CLIN 0001AA (200 square feet) and 0001AH (22 squares), in the midst of a substantially higher estimate for CLIN 0001AC (23,333 square feet), also should have triggered M.G. Construction to inquire, if confused, as to the proper interpretation of the individual contract line items in the process of formulating its bid prices. Moreover, the fact that the contractor only was to perform work pursuant to specific "delivery orders" should have made it possible for plaintiff to easily understand what payment it was to receive under the terms of the Schedule incorporated into the contract.

By fostering an environment in which prospective contractors with the government are motivated to clarify what they believe are ambiguities or points of confusion in a proposed contract, "expensive and complex" disputes and litigation, hopefully, can be avoided during and following contract performance. See Monarch Painting Corp. v. United States, 16 Cl. Ct. 280, 287 (1989) (citing Beacon Constr. Co. v. United States, 161 Ct. Cl. 1, 6-7, 314 F.2d 501, 504 (1963)). In addition, forcing contractors to seek clarification before anyone is legally bound will:

> deter a bidder who knows (or should know) of a serious problem in interpretation, from consciously taking the award with a lower bid (based on the less costly reading) with the expectation that he will then be able to cry "change," or "extra" if the procuring officials take the other view after the contract is made.

S.O.G. of Arkansas v. United States, 212 Ct. Cl. 125, 131, 546 F.2d 367, 371 (1976). The court already has determined that the plaintiff's interpretation of the solicitation and contract language taken as a whole was unreasonable, that the contract language was not ambiguous and that the plaintiff, after performance, is, in effect, attempting to rewrite the contract language. Plaintiff's failure to inquire and clarify the contract language independently defeats plaintiff's claim on count one of its fourth amended complaint.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment on the first count of its fourth amended complaint is **DENIED**, and defendant's cross-motion for partial summary judgment on the first count is **GRANTED**. The six other claims in the plaintiff's fourth amended complaint remain pending. By separate order, the parties will be directed to confer and propose a schedule for further proceedings.

**IT IS SO ORDERED.**

s/Marian Blank Horn

**MARIAN BLANK HORN**
**Judge**